IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN GAMBOA, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE PROCTOR & GAMBLE COMPANY,<br><br>Defendant. | Case No. 21 C 6515<br><br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

Jan Gamboa filed this action individually and on behalf of similarly situated individuals in Illinois state court, alleging that the Proctor & Gamble Company (P&G) violated the Illinois Biometric Privacy Act, 740 Ill. Comp. Stat. 14/1, *et seq.* (typically referred to as BIPA), by collecting, storing, using, and disseminating biometric data with their Oral B smartphone application. P&G removed the action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). P&G now seeks to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). For the following reasons, P&G's motion to transfer venue is denied.

**Background**

The following facts are taken from the complaint and the parties' briefs. In June 2021, Jan Gamboa, a resident of Illinois, purchased an Oral B iO Series 7G toothbrush. Gamboa also downloaded the Oral B smartphone application, which connects with the user's toothbrush via Bluetooth and tracks the user's brushing habits to provide feedback on how well he is brushing. The Oral B iO Series 7G toothbrush and corresponding app are products of P&G.

When a user opens the Oral B app on his smartphone, this image appears.

> The Oral-B app collects your usage data to help us create a better and more personalized experience for you.
>
> ☐ REQUIRED FOR REGISTRATION
> **Terms.** You are at least 18, have read P&G Privacy Policy and agree to the Oral-B Mobile app Terms of service.
>
> ☑ OPTIONAL
> **Analytics.** The app uses Google Firebase to create accurate, real-time user reports. This helps us improve the performance and features of the app. Learn more.
>
> ☑ **Debug data.** The app uses Crashlytics and Embrace to send data helpful for debugging and troubleshooting.
>
> **ALLOW**
>
> MAYBE LATER

The user sees a disclosure that Oral B collects "usage data" followed by three bullet points with clickable boxes providing additional information about the app. The first and most relevant point states "REQUIRED FOR REGISTRATION. **Terms**. You are at least 18, have read P&G Privacy Policy and agree to the Oral-B Mobile app Terms of service." The user can then click on the hyperlinked Terms of service to read the agreement. The agreement states that it "contains very important information about your rights and obligations, as well as limitations and exclusions that may apply to you if you register, participate in and/or use the Oral-B mobile application." Later on, the agreement provides that any disputes related to the agreement "shall be resolved exclusively in the state or federal courts located in Hamilton County, Ohio." The

2

user does not have to actually click the link or scroll through the agreement to register an account in the app; he need only click the box affirming that he has read it, then click the "ALLOW" button at the bottom of the screen.

Yet a user does not need to register an account to use the app. Underneath the "ALLOW" button is a "MAYBE LATER" button. If the user clicks "MAYBE LATER," he can continue using the app without registering an account or clicking the box affirming that he agrees to the Terms. Although P&G provided an affidavit describing the registration process (dkt. 17-2), Gamboa never alleged nor did either party present evidence that he registered such an account.

Gamboa alleges that, as part of the app's toothbrushing-tracking technology, P&G captures, collects, stores, uses, and disseminates facial geometry and biometric data in violation of BIPA. P&G now seeks to enforce the forum selection clause in the Terms against Gamboa and transfer venue to the Southern District of Ohio.

## Legal Standard

Under 28 U.S.C. § 1404(a), a party may move to transfer venue based on "the convenience of the parties and witnesses, in the interest of justice." Section 1404(a) therefore provides the mechanism for enforcing a forum selection clause. *See Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Forum selection clauses are presumed valid if the underlying contract is enforceable, *see IFC Credit Corp.* v. *Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609–10 (7th Cir. 2006), and only unusual circumstances warrant deviating from the parties' contractually agreed forum, *see Mueller* v. *Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018).

## Analysis

I.        **Enforceability of Forum Selection Clause**

3

P&G argues that Gamboa is bound by the app's Terms of service agreement and its forum selection clause designating the appropriate venue in Hamilton County, Ohio. Gamboa argues that he never assented to the Terms and therefore is not bound by the forum selection clause.

At the threshold, the parties dispute whether Illinois or Ohio law governs whether they formed a valid contract, but neither party has demonstrated a conflict between jurisdictions. As such, the court applies Illinois law to determine whether the parties formed a contract with a forum selection clause. *See Sosa* v. *Onfido, Inc.*, 8 F.4th 631, 638 (7th Cir. 2021); *Townsend* v. *Sears, Roebuck and Co.*, 879 N.E.2d 893, 898 (Ill. 2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.").

Under Illinois law, the party seeking to enforce a contract bears the burden of showing its existence. *Reese* v. *Forsythe Mergers Grp.*, 682 N.E.2d 208, 213 (Ill. App. Ct. 1997).[1] Contract formation requires an offer, acceptance, and consideration, in conjunction with an objective manifestation of mutual assent. *See also Vill. of S. Elgin* v. *Waste Mgmt. of Ill. Inc.*, 810 N.E.2d 658, 670 (Ill. 2004).

Here, the contract allegedly was formed through the use of an app. Agreements formed via app or website fall into three categories based on how the agreement is (or is not) presented to the user: clickwrap, hybridwrap, or browsewrap. A clickwrap agreement arises where a party clicks a button affirming that he assents to the agreement after being shown the full terms. *See, e.g., Wilson* v. *Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 882 (N.D. Ill. 2020); *Sgouros* v. *TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *4 (N.D. Ill. Feb. 5, 2015), *aff'd*, 817 F.3d 1029 (7th Cir. 2016). A hybridwrap agreement arises where the app does not

---

[1] The same would be true should the court instead choose to apply Ohio law. *See Frank Novak & Sons, Inc.* v. *A-Team, LLC*, 6 N.E.3d 1242, 1249 (Oh. App. Ct. 2014).

display the full agreement but does provide a hyperlink to the terms and informs the user that by taking a certain action, such as signing up for an account, he is assenting to the agreement. *See, e.g.*, *Anand* v. *Heath*, No. 19 C 16, 2019 WL 2716213, at *4 (N.D. Ill. June 28, 2019); *TopstepTrader, LLC* v. *OneUp Trader, LLC*, No. 17 C 4412, 2018 WL 1859040, at *3 (N.D. Ill. Apr. 18, 2018).[2] A browsewrap agreement binds an individual simply through the use of the app without any active manifestation of assent, and the agreement is enforceable only if the user had actual or constructive knowledge of the terms. *See, e.g.*, *Wilcosky* v. *Amazon.com, Inc.*, 517 F. Supp. 3d 571, 766–67 (N.D. Ill. 2021); *Van Tassell* v. *United Mktg. Grp.*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011).

P&G claims that Gamboa assented to the terms by clicking the box affirming that the user agrees to the Terms of service, which must be clicked to register an account. But P&G provides no evidence that Gamboa ever registered an account, and the evidence shows that registration is not required to utilize the app's toothbrushing-tracking and feedback function. P&G suggests that Gamboa should have come forward with evidence that he did not register for an account, but that was not his burden where P&G has not made a *prima facie* showing of a valid contract. *See Bower* v. *Jones*, 978 F.2d 1004, 2013 (7th Cir. 1992). Because there is no indication that Gamboa ever registered for an account or affirmed that he agreed to the Terms by clicking the appropriate buttons, there is not an enforceable clickwrap or hybridwrap agreement. *See Anand*, 2019 WL 2716213, at *4.

Still, under the theory of a browsewrap agreement, Gamboa may be bound if he had actual or constructive knowledge of the Terms. There is no contention that Gamboa had actual

---

[2] Ohio applies virtually identical standards as Illinois does for such agreements. *See Walker* v. *Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021); *Rudolph* v. *Wright Patt Credit Union*, 175 N.E.2d 636, 651–52 (Ohio Ct. App. 2021).

5

knowledge, but P&G argues that Gamboa had constructive knowledge of the Terms because they were accessible via hyperlink on the registration page and in the "Legal" section of the app, and the Terms of service were publicly available on the Oral B website.

No evidence shows that Gamboa ever visited the Oral B website, and he cannot be found to have constructive knowledge of the Terms from a website he may never have visited. The only way Gamboa could be bound, then, is if he had constructive knowledge of the Terms via the app. "Where the terms are not displayed but must be brought up by using a hyperlink, courts ... have looked for a clear prompt directing the user to read them." *Sgouros* v. *TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016). And "where a website specifically states that clicking means one thing, that click does not bind users to something else." *Id.* Here, when a user opens the app, he is notified that agreeing to the Terms is required to register an account; the disclosure page does not state, however, that assent to the Terms is required to use the app or that use of the app constitutes assent. *Cf. Acaley* v. *Vimeo, Inc.*, 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020) (pages stating, "By continuing I agree to the terms" and "By starting you agree to our terms" sufficient to find reasonable notice of terms).

Moreover, the app allows the user to bypass registering an account and still use the app by clicking "MAYBE LATER." Thus, while the app puts a reasonable user on notice that there are Terms associated with registering an account and he should investigate them by clicking the hyperlink, the app's disclosure page gives no notice that the terms are equally applicable to mere use of the app. On the contrary, it gives the impression that agreeing to the terms is only "required" to register an account and that an individual can avoid this requirement by clicking "MAYBE LATER" and not registering an account.

6

Additionally, there is no evidence that the Terms are presented to the user after he leaves the disclosure page, nor is there evidence of a "clear prompt" directing a user to visit the "Legal" section of the app to read the Terms there. *See Sgouros*, 817 F.3d at 1035. Therefore, P&G has not shown that Gamboa had constructive knowledge of the Terms, and he is not bound by the forum selection clause.

## II.  Transfer Factors Analysis

Although the forum selection clause does not apply, the parties also present arguments on the appropriateness of transfer under the traditional factors analyzed on a § 1404(a) motion. "To support a motion to transfer venue, the moving party must show that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Imperial Crane Servs., Inc.* v. *Cloverdale Equip. Co.*, No. 13 C 4750, 2013 WL 5904527, at *5 (N.D. Ill. Nov. 4, 2013) (internal citation omitted).

As to the first and second factors, venue is proper in either district. Venue is proper in this district under 28 U.S.C. § 1391(b) because Gamboa bought the toothbrush and used it and the app in Illinois, and he alleges that a class of Illinois residents suffered BIPA violations. And venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(a) because P&G has its principal place of business in Ohio.

For the third factor, in assessing the convenience for the parties and witnesses, the court considers "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties in litigating in the respective fora." *Imperial Crane*, 2013 WL 5904527, at *5. These factors weigh in favor of Gamboa.

To begin, Gamboa chose to file the action in this district, and he purchased and used the toothbrush and app here. Where there is a valid forum selection clause, the plaintiff's choice of forum "merits no weight." *Atl. Marine Const. Co.*, 571 U.S. at 63. Here, however, the forum selection clause is not enforceable against Gamboa, and so his choice of forum warrants consideration and weighs in favor of remaining in Illinois. *See Research Automation, Inc.* v. *Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). But, with respect to sources of proof and convenience of the witnesses, documents about the app's design and related witnesses are in Ohio, where the toothbrush and app were developed. Still, most discovery in this case can proceed electronically and depositions may be conducted via videoconference, avoiding majorly inconveniencing witnesses at this stage. As for the parties' convenience, P&G prefers, of course, to litigate in Ohio, while Gamboa prefers Illinois where he and the other putative class members are located. Overall, the convenience factor favors keeping the case in Illinois.

Finally, the interests of justice also favor Gamboa. The interest-of-justice factor considers "docketing congestion and speed to trial in the transferor and potential transferee districts; each court's familiarity with the applicable law; the desirability of resolving the controversy in each forum; and the relationship of the respective communities to the controversy." *Id.* at *7.

The docketing congestion factor appears split. On average, courts in the Southern District of Ohio proceed to trial three months faster than courts in the Northern District of Illinois, but, on average, courts in the Northern District of Illinois dispose of cases about 4 months faster than Southern District of Ohio courts. (Dkt. 17 at 10; dkt. 24 at 14.) Familiarity with the applicable law more clearly favors the Northern District of Illinois. Although BIPA is a relatively new and unique statute, it is safe to say that federal courts in Illinois are familiar with it, for it has generated a significant amount of litigation. Moreover, Gamboa is an Illinois citizen, whose

8

claims are based on an Illinois statute, and the controversy arose in Illinois, meaning that Illinois is a desirable forum with an interest in adjudicating this dispute. These considerations outweigh P&G's connection to Ohio, where it conducts relevant business operations and where witnesses may be located.

Overall, the factors weigh in favor of Gamboa. Therefore, P&G's motion to transfer is denied.

### Conclusion and Order

P&G's motion to transfer venue (dkt. 15) is denied with leave to refile in the event that evidence obtained in discovery shows that Gamboa is subject to the forum selection clause. P&G has until 6/8/2022 to file a response to Gamboa's motion to remand (dkt. 25), if any. Gamboa has until 6/15/2022 to file a reply.

Date: May 24, 2022

U.S. District Judge Joan H. Lefkow